**FILED**

07/30/2024

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 23-0224

DA 23-0224

IN THE SUPREME COURT OF THE STATE OF MONTANA

2024 MT 155

THOMAS C. WEINER, M.D.,

     Plaintiff and Appellant,

  v.

ST. PETER'S HEALTH, a Montana Domestic
Nonprofit Corporation, d/b/a St. Peter's Hospital,

     Defendant and Appellee.

APPEAL FROM:     District Court of the First Judicial District,
                In and For the County of Lewis and Clark, Cause No. CDV 2022-501
                Honorable Kathy Seeley, Presiding Judge

COUNSEL OF RECORD:

     For Appellant:

          J. Devlan Geddes, Jeffrey J. Tierney, Henry J.K. Tesar, Goetz, Geddes &
          Gardner, P.C., Bozeman, Montana

     For Appellee:

          David M. McLean, McLean & Associates, PLLC, Missoula, Montana

          Michael J. Miller, Strong & Hanni, Salt Lake City, Utah

Submitted on Briefs:  January 10, 2024

Decided:  July 30, 2024

Filed:

                          _____
                                 Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1 Thomas C. Weiner, M.D. (Weiner), appeals the order entered in the First Judicial District Court, Lewis and Clark County, dismissing his complaint against St. Peter's Health (SPH). We affirm the dismissal, but upon a different rationale than held by the District Court.

¶2 We restate the issue on appeal as whether Weiner's complaint is barred by the claim-splitting doctrine.

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 Weiner is a physician board certified in oncology and licensed to practice medicine in Montana. Weiner joined the SPH medical staff in 1996 and remained with SPH until 2020, when his medical staff membership and clinical privileges were revoked by the SPH Board of Directors. Weiner had already initiated litigation (*Weiner I*) against SPH and several of its agents by filing a complaint on December 10, 2020, alleging several causes of action, including wrongful termination, civil conspiracy, and violation of due process. In January 2021, a month after *Weiner I* had commenced, Weiner requested his right to an administrative hearing under the SPH Bylaws. As a result, on April 7, 2021, SPH moved to stay the case until the conclusion of Weiner's administrative peer review process. Weiner opposed the motion and the court denied the stay. Weiner also sought leave to amend his complaint, which the court granted on May 18, 2021. Thereafter, in a June 14, 2021, scheduling order, the court set an amendment deadline of September 3, 2021, and

2

ordered that the schedule "shall not be modified except by leave of the [c]ourt upon a showing of good cause."

¶4 Five months after the amendment deadline in *Weiner I* had passed, Weiner moved for leave to file a second amended complaint. Weiner claimed the second amended complaint would address what occurred during the administrative review process. The court denied leave reasoning that Weiner had previously opposed the stay and had always intended to supplement his complaint with claims related to the administrative review. The court held that Weiner should have either agreed to the stay or raised the issue at the scheduling conference. The court determined that the amendment would cause delay and prejudice to SPH.

¶5 On June 22, 2022, Weiner filed the instant action (*Weiner II*) against SPH alleging the claims he had attempted to add through his disallowed second amended complaint in *Weiner I*. The claims in *Weiner II* recite the same factual background and history of the parties as in *Weiner I*, and ask for declaratory relief, a permanent injunction regarding reporting to the National Practitioner Data Bank (NPDB), and breach of contract/violation of Medical Staff Bylaws. SPH moved to dismiss, arguing *Weiner II* was an impermissible collateral attack, claim splitting, res judicata, and laches. The District Court granted SPH's motion based on res judicata, reasoning that Weiner could have brought his *Weiner II* claims in *Weiner I* and that the court's order denying Weiner leave to file his second amended complaint in *Weiner I* was a final judgment on the merits.

¶6 Weiner appeals the dismissal of *Weiner II*.

3

## STANDARD OF REVIEW

¶7      "[A] district court's application of res judicata is an issue of law which is reviewed for correctness." *Hartsoe v. Christopher*, 2013 MT 57, ¶ 9, 369 Mont. 223, 296 P.3d 1186.

¶8      "[T]he power is inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. . . ." *State ex rel. Kennedy v. District Court*, 121 Mont. 320, 336, 194 P.2d 256, 264 (1948). "This does not mean an arbitrary control. The control must be in the exercise of a sound discretion." *Kennedy*, 121 Mont. at 336, 194 P.2d at 264. A court, as part of its power to administer its docket, may dismiss or stay a suit that is duplicative of another. *See Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817, 96 S. Ct. 1236, 1246 (1976). "The complex problems that can arise from multiple . . . filings do not lend themselves to a rigid test, but require instead that the district court consider the equities of the situation when exercising its discretion." *Curtis v. Citibank, N.A.*, 226 F.3d 133, 138 (2d Cir. 2000). Accordingly, when claim-splitting is the basis for a dismissal, we review a district court's decision for abuse of discretion. *Curtis*, 226 F.3d at 138.

## DISCUSSION

¶9      We first consider the District Court's application of res judicata to dismiss Weiner's complaint.

¶10     Litigants "generally have no right to maintain two separate actions involving the same subject matter at the same time in the same court and against the same defendant." *Adams v. California Dep't of Health Servs.*, 487 F.3d 684, 688 (9th Cir. 2007) (internal

4

citations omitted). Res judicata or claim preclusion embodies a "judicial policy that favors a definite end to litigation, whereby we seek to prevent parties from incessantly waging piecemeal, collateral attacks against judgments." *Baltrusch v. Baltrusch*, 2006 MT 51, ¶ 15, 331 Mont. 281, 130 P.3d 1267 (internal citations omitted). The doctrine serves to "conserve judicial resources, relieve parties of the expense and vexation of multiple lawsuits, and foster reliance on adjudication by preventing inconsistent decisions." *Brilz v. Metro. Gen. Ins. Co.*, 2012 MT 184, ¶ 18, 366 Mont. 78, 285 P.3d 494. Under claim preclusion, a final judgment on the merits of an action precludes the parties or their privies from relitigating claims that were or could have been raised in that action. Thus, claims that a party had an opportunity to raise, but did not, may not be relitigated. "A judgment is binding and conclusive . . . as to all issues which could have been properly raised irrespective of whether the particular matter was in fact litigated." *Hall v. Heckerman*, 2000 MT 300, ¶ 16, 302 Mont. 345, 15 P.3d 869 (citations omitted). "Claim preclusion traditionally aimed to prevent [parties] from 'splitting' causes of action, but now also operates as a kind of common-law compulsory joinder requirement, promoting judicial economy through the consolidation of related crimes." *Brilz*, ¶ 23, (quoting *Negron-Fuentes v. UPS Supply Chain Solutions*, 532 F.3d 1, 8 (1st Cir. 2008)). Hence, "[t]he law of res judicata now reflects the expectation that parties who are given the capacity to present their 'entire controversies' shall in fact do so." Restatement (Second) of Judgments § 24 cmt. a.

¶11 The elements of claim preclusion are:

(1) the parties or their privies are the same in the first and second actions;
(2) the subject matter of the actions is the same;
(3) the issues are the same in both actions, or are ones that could have been raised in the first action, and they relate to the same subject matter;
(4) the capacities of the parties are the same in reference to the subject matter and the issues between them; and
(5) a valid final judgment has been entered on the merits in the first action by a court of competent jurisdiction.

*Brilz*, ¶ 22; *Baltrusch*, ¶ 16; *Mt. W. Bank, N.A. v. Glacier Kitchens, Inc.*, 2012 MT 132, ¶ 14, 365 Mont. 276, 281 P.3d 600; *Touris v. Flathead County*, 2011 MT 165, ¶¶ 13, 18, 361 Mont. 172, 258 P.3d 1. Here, the District Court determined there was no dispute the parties and their respective capacities were the same in *Weiner I* and *Weiner II*. The court thus focused its analysis on identity of the subject matter and issues and whether there was a final judgment.

¶12 Turning first to identity of subject matter and issues, the District Court reasoned:

> The current amended complaint in *Weiner I* is drafted broadly to include allegations about the "varied processes" SPH has used to terminate both Weiner's employment and privileges. The "sham" peer review process is one of the processes. The amended complaint includes "Count III, Breach of Contract/Violation of Medical Staff Bylaws." In [its] order on the motion to stay, [the *Weiner I* court] wrote, "[a]mong other claims, Weiner's [first amended] complaint alleges Defendants violated its bylaws by suspending his medical staff membership and clinical privileges." It appears that [Weiner] will be able to address the lion's share of his concerns regarding the Bylaws in the existing case. In addition, [the *Weiner I* court] already dissolved the preliminary injunction regarding the report to NPDP after the administrative review process was complete. This decision was appealable but was not appealed by [Weiner]. This Court sees no basis to revisit this decision in a subsequent lawsuit.

(Internal citations omitted.)

6

¶13    In *Brilz*, we noted that "[w]hether claims are 'related' can be the thorniest facet of the analysis, as the doctrine does not preclude everything that might have been disputed between the parties, but only matters within a certain sphere." *Brilz*, ¶ 23. Relying upon *Olsen v. Milner*, 2012 MT 88, ¶ 23, 364 Mont. 523, 276 P.3d 934, *Touris*, ¶ 17, and *Wiser v. Mont. Bd. Of Dentistry*, 2011 MT 56, ¶¶ 12-13, 360 Mont. 1, 251 P.3d 675, we explained "that claim preclusion applies where the second suit arises from the same underlying basis or subject matter as the first suit." *Brilz*, ¶ 23. We drew on § 24 of the Restatement (Second) of Judgments, which addressed the dimensions of a "claim," to determine whether claims are related for purposes of a merger analysis. The Restatement formulation is the predominant federal rule, which has been applied in numerous states. That section provides:

> (1) When a valid and final judgment rendered in an action extinguishes the plaintiff's claim pursuant to the rules of merger or bar, the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.
>
> (2) What factual grouping constitutes a "transaction", and what groupings constitute a "series", are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties expectations or business understanding or usage.

Restatement (Second) of Judgments, § 24 (internal citations omitted). "The concept of 'transaction' here 'connotes a natural grouping or common nucleus of operative facts.'" *Brilz*, ¶ 24 (quoting Restatement (Second) of Judgments § 24 cmt. b). Thus, "where one act causes a number of harms to, or invades a number of different interests of the same

person, there is still but one transaction. . . ." Restatement (Second) of Judgments § 24 cmt. c. In *Brilz*, ¶ 24, we adopted the Restatement's rationale and premise underlying this approach as well:

> The rationale and premise underlying this approach is that modern procedural systems afford parties ample means for fully developing the entire transaction in one action–e.g., by permitting the presentation of all material relevant to the transaction without artificial confinement to any single substantive theory or kind of relief and without regard to historical forms of action or distinctions between law and equity; by allowing allegations to be made in general form and reading them indulgently; by allowing allegations to be mutually inconsistent subject to the pleader's duty to be truthful; by permitting considerable freedom of amendment and tolerating changes of direction in the course of litigation; and by enabling parties to resort to compulsory processes besides private investigations to ascertain the facts surrounding the transaction. Restatement (Second) of Judgments § 24 cmt. a.

¶14 Here, we conclude the District Court's analysis on whether the claims and issues in *Weiner I* and *Weiner II* were related is well-reasoned. The claims arose from the same transaction and there is a common nucleus of operative facts underlying the two claims: Weiner's termination from SPH's medical staff and the manner in which it occurred. The facts are related in time, space, origin, and motivation and present a single convenient trial unit.

¶15 We turn to whether a final judgment was entered on the merits when the court in *Weiner I* denied leave to file the second amended complaint. One of the elements in a res judicata analysis is that there must have been a final judgment on the merits of the claim. "A valid and final personal judgment rendered in favor of the defendant bars another action by the plaintiff on the same claim." Restatement (Second) of Judgments § 19. "A final

8

judgment is one which constitutes a final determination of the rights of the parties; any judgment, order or decree leaving matters undetermined is interlocutory in nature and not a final judgment for purposes of appeal." *In Re Estate of Boland*, 2019 MT 236, ¶ 47, 397 Mont. 319, 450 P.3d 849. *See* also *Powder River Cnty.*, 2002 MT 259, ¶ 28, 312 Mont. 198, 60 P.3d 357 (citing *In re B.P.*, 2000 MT 39, ¶ 15, 298 Mont. 287, 995 P.2d 982); *see also Howard Gault & Son, Inc. v. First Nat'l Bank of Hereford* (Tex. Civ. App. 1975), 523 S.W.2d 496, 498 (noting that "[a] judgment is considered final only if it determines the rights of the parties and disposes of all of the issues involved so that no future action by the court will be necessary in order to settle and determine the entire controversy."). In *Curtis*, the court held that "[o]nly denial of leave to amend *on the merits* precludes subsequent litigation of the claims in the proposed amended complaint" and that "[h]ere, the denial of leave to file the second amended complaint was clearly not based on the merits, but rather on the procedural ground of untimeliness." *Curtis*, 226 F.3d at 139 (emphasis in original).

¶16    While there may be circumstances where the denial of leave to file an amended complaint constitutes a final judgment on the merits, those circumstances are not present here. The *Weiner I* court's order denying leave to amend was based on the motion's untimeliness; prejudice to SPH; Weiner's objection to a stay; a scheduling order setting the final amendment date five months earlier from when Weiner filed his motion; and the failure of Weiner to alert the court to the issue during the scheduling conference. Under these circumstances, the order denying leave to amend cannot be construed as a final

judgment of the claims in *Weiner I*.  Because there was no final judgment constituting a final determination on the rights of the parties in *Weiner I*, the elements of res judicata have not been satisfied.  The District Court therefore erred in basing its decision to dismiss on res judicata.  Nonetheless, but significant to the rationale supporting claim-splitting, Weiner still has the remedy of appealing the denial of his motion to amend in *Weiner I*.

¶17    Although we conclude the elements of res judicata have not been satisfied, we consider SPH's argument, made at trial and on appeal, that *Weiner II* constituted improper claim-splitting.    Long ago, the Supreme Court captured the general principle of claim-splitting:

> When the pendency of [a previously filed] suit is set up to defeat another, the case must be the same.  There must be the same parties, or, at least, such as represent the same interest, there must be the same rights asserted and the same relief prayed for.  This relief must be founded on the same facts, and the title, or essential basis of the relief sought, must be the same.

*Haytian Republic*, 154 U.S. 118, 124, 14 S. Ct. 992, 993 (1984) (quotation omitted).  More recent cases analyze claim-splitting as an aspect of res judicata.  *See Davis v. Sun Oil Co.*, 148 F.3d 606, 613 (6th Cir. 1998) (per curiam) (referring to claim-splitting as "the 'other action pending' facet of the res judicata doctrine"); *Shaver v. F. W. Woolworth Co.*, 840 F.2d 1361, 1365 (7th Cir. 1988) ("This application of the doctrine of res judicata prevents the splitting of a single cause of action and the use of several theories of recovery as the basis for separate suits."); *Iron Workers Local Union No. 17 Ins. Fund v. Phillips Morris Inc.*, 182 F.R.D. 512, 522 (N.D. Ohio 1998) (noting that "the defense of claim splitting is related to the doctrine of res judicata and the notions of issue and claim preclusion");

*Foianini v. Brinton*, 855 P.2d 1238, 1240 (Wyo. 1993) (holding the Restatement (Second) of Judgments § 24's definition of a "claim" applies "to both the doctrine of res judicata and the closely related rule against claim splitting"); *951 Harbor Drive, LLC v. SD Constr., LLC*, 2024 Fla. App. LEXIS 4786 ("Courts characterize claim-splitting as an 'aspect' of res judicata and claim preclusion, protecting parties from duplicative litigation and promoting judicial economy."); Joseph E. Edwards, Annotation, *Waiver of, by failing to promptly raise, objection to splitting cause of action*, 40 A.L.R.3d 108, S 1 n.2 ("It will be observed that the rule against 'splitting' appears to be considered a part of the doctrine of res judicata in several [cases].").

¶18     Claim-splitting and res judicata both serve the same interests of promoting judicial economy and shielding parties from vexatious concurrent and duplicative litigation, but claim-splitting is more concerned with a trial court's comprehensive management of its docket rather than the focus of res judicata on protecting the finality of judgments. Hence, the difference in our standards of review for claim splitting (abuse of discretion) and res judicata (de novo). As noted in *Katz v. Gerardi*, different treatment is also "warranted because of the different results created by a dismissal under res judicata and claim-splitting." 655 F.3d 1212, 1219 (10th Cir. 2011). A dismissal on res judicata grounds precludes a party from asserting a claim. "In such a case, we leave a party without recourse for its claims, and thus we want to be sure such a decision stems from a previous valid, final judgment on the merits." *Katz*, 655 F.3d at 1219. In contrast, with a dismissal based "on claim-splitting grounds, by its nature, the dismissed party is involved in another

pending suit regarding the same subject matter against the same defendants." *Katz*, 655 F.3d at 1219. As the claim-splitting doctrine exists to prevent waste of judicial resources and shield parties from vexatious and duplicative litigation, the doctrine does not impose the requirement of a final judgment.

¶19 While it is correct that a final judgment is necessary for the doctrine of res judicata or claim preclusion, it is not required for purposes of claim-splitting. The doctrine of res judicata requires as one element a valid, final judgment on the merits. *See Pelt v. Utah*, 539 F.3d 1271, 1281 (10th Cir. 2008). Thus, "[w]hile we analyze claim splitting as an aspect of res judicata, the claim-splitting doctrine does not fall within a conventional res judicata analysis." *Katz*, 655 F.3d at 1218. A majority[1] of states have adopted the claim-splitting doctrine and held that a final judgment is not a necessary component of the analysis:

> It is clear that a motion to dismiss based on improper claim-splitting need not–indeed, often cannot–wait until the first suit reaches final judgment. . . .Thus, in the claims-splitting context, the appropriate inquiry is whether, *assuming that the first suit were already final*, the second suit could be precluded pursuant to claim preclusion.

*Katz*, 655 F.3d at 1218 (quoting *Hartsel Springs Ranch of Colo., Inc., v. Bluegreen Corp.*, 296 F.3d 982, 991 n.1 (emphasis in original)). Hence, the test for claim-splitting "is not whether there is finality of judgment, but whether the first suit, assuming it were final, would preclude the second suit." *Katz*, 655 F.3d at 1218. The rule against claim-splitting

---

[1] *See Warrington v. Watkins & Eager, PLLC*, 371 So. 3d 1277, 1280, 2023 Miss. LEXIS 258 (holding "Mississippi is among the majority of states which does not allow splitting a cause of action" and recognizing the doctrine requires all the elements of res judicata to be met, except for the requirement of a final judgment.)

12

would be rendered meaningless if the party challenging a second suit on the basis of claim-splitting had to wait until the first suit was final. The second suit would proceed ahead until the first suit were final, all the while wasting judicial resources and causing vexatious and duplicative litigation. *See* Restatement (Second) of Judgments § 26 cmt. a ("Where the plaintiff is simultaneously maintaining separate actions based upon parts of the same claim, and in neither action does the defendant make the objection that another action is pending based on the same claim, judgment in one of the actions does not preclude the plaintiff from proceeding and obtaining judgment in the other action.").

¶20    When we assess whether duplicative claims have been made in contravention of the claim-splitting rule, we assume the finality of the first suit for purposes of the analysis. The proper question is whether, assuming the first suit was already final, the second suit would be precluded under res judicata. *See Hartsel*, 296 F.3d at 987 n.1; *Katz*, 655 F.3d at 1219. This determination will hinge in large part on how one defines a claim. As already noted, this Court adopted in *Brilz* the broad definition of a cause of action found in the Restatement (Second) of Judgments § 24. We use the same analysis in assessing the dismissal of a suit based on claim-splitting grounds as on res judicata grounds, except we assume the finality of the first suit.

¶21    Here, we have determined that the parties are the same in *Weiner I* and *Weiner II*. We have determined under the Restatement's "transaction" definition of cause of action that the subject matter and issues in both suits are the same; *Weiner II* arose from the same transaction and there is a common nucleus of operative facts underlying the two suits:

13

Weiner's termination from SPH's medical staff and the manner in which it occurred. Finally, we have determined the capacities of the parties are the same. We adopt and apply the claim-splitting doctrine to conclude that the District Court did not abuse its discretion in dismissing *Weiner II*, but that it was not necessary for the court to find the order denying leave to amend constituted a final judgment. Indeed, it did not. *Weiner II* was properly dismissed based on the prohibition against claim-splitting.

## CONCLUSION

¶22     We hold the District Court was incorrect in determining the court's order in *Weiner I*, which denied Weiner leave to amend his complaint, was a final judgment for purposes of res judicata. However, we adopt and apply the prohibition against claim-splitting in reaching our conclusion that the District Court did not abuse its discretion in dismissing *Weiner II*.

¶23     Affirmed.

/S/ LAURIE McKINNON

We Concur:

/S/ JAMES JEREMIAH SHEA
/S/ BETH BAKER
/S/ INGRID GUSTAFSON
/S/ JIM RICE

14